**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 17-21513 (JJT) |
| | ) | | |
| INTEGRITY GRAPHICS, INC., | ) | | |
|     DEBTOR. | ) | CHAPTER | 7 |
| | ) | | |
| BONNIE MANGAN, TRUSTEE, | ) | ADV. PRO. NO. | 19-02027 (JJT) |
|     PLAINTIFF | ) | | |
| | ) | | |
| V. | ) | RE: ECF NOS. | 1, 19, 20, 24, 53 |
| | ) | | 55, 56 |
| PEOPLE'S UNITED BANK, N.A., | ) | | |
| GHP MEDIA, INC., AND | ) | | |
| JOSEPH LAVALLA, | ) | | |
|     DEFENDANTS. | ) | | |
| | ) | | |

**MEMORANDUM OF DECISION
ON DEFENDANTS' MOTION TO DISMISS**

    I.    INTRODUCTION

This Adversary Proceeding was initiated by the Chapter 7 Trustee (the "Trustee") on October 31, 2019 (the "Complaint", ECF No. 1), in order to avoid and recover, pursuant to 11 U.S.C. §§ 544 and 548, the Connecticut Fraudulent Transfer Act (CUFTA)[1] and Article Nine of the Uniform Commercial Code made applicable through the Connecticut General Statutes[2], certain intentional and/or constructive fraudulent transfers of the Debtor's property made to or for the benefit of the Defendants in connection with a purported secured party sale agreement ("Secured Party Sale Agreement") between Defendants People's United Bank ("People's United") and GHP Media ("GHP"). Defendants People's United, GHP and Joseph Lavalla ("Lavalla"), the principal

---

[1] *See* Conn. Gen. Stat. § 52-552 *et seq.*
[2] *See* Conn. Gen. Stat. § 42a-9-101 *et seq.*

of the Debtor at the time the Secured Party Sale Agreement was entered into, now move pursuant to Fed. R. Civ. P. 12(b)(1) and (6), as made applicable to this proceeding by Fed. R. Bankr. P. 7012(b), for dismissal of the Complaint as to Counts I and III alleging actual fraudulent transfer, Counts II and IV alleging constructive fraudulent transfer, Count VI alleging constructive trust and Count VII alleging a violation of Article Nine of the Uniform Commercial Code.[3] *See* Motion to Dismiss (ECF No. 19, the "Motion"), p. 1. Therein, the Defendants principally argue that the material allegations in the Complaint are largely based upon "information and belief" and that the source of the information relied upon and the reasons for the Trustee's belief are not provided for in the Complaint. *Id.*, p. 1. Specifically, the Defendants claim that the Complaint contains a conclusory allegation that the value of the assets sold pursuant to the Secured Party Sale Agreement exceeded the purchase price and that the Complaint does not state what value or range of values the Trustee attributes to the assets, *Id.*, p. 2; while also failing to state any of the circumstances constituting actual fraud. Memorandum of Law in Support of the Motion (ECF No. 20, "MOL"), p. 4.

A hearing on the Motion was scheduled for March 12, 2020, however, prior to the hearing taking place, due to the Covid-19 pandemic, the hearing was continued (ECF No. 27). The hearing on the Motion was ultimately held on July 9, 2020 (ECF No. 54), whereat the Parties were able to advance their respective arguments. In order to address novel arguments presented during oral argument, the Court requested supplemental briefing and thereafter took the matter under advisement. After due consideration of the Motion, the supporting papers and the supplemental

---

[3] The Defendants do not move to dismiss Count V, which alleges unjust enrichment as to GHP and Lavalla only, and pertains to certain assets that were allegedly excluded from the Secured Party Sale, but that were allegedly transferred to Defendants GHP and Lavalla nonetheless. *See* Count V of the Complaint, p. 11.

2

memoranda of law filed by the Parties, and as discussed herein, the Court hereby **GRANTS** the Defendants' Motion to Dismiss in part and hereby **DENIES** it in part.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), (H) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. BACKGROUND

Prior to the filing of an involuntary petition by three of its trade creditors on October 3, 2017, *see* Main Case 17-21513, ECF No. 1; the Debtor was a full-service print and design company headquartered in Windsor, Connecticut. Complaint, ¶ 11. Lavalla was an equity holder of the Debtor and asserted control over the Debtor's business and business practices. *Id.*, ¶ 10. The Debtor had a commercial revolving line of credit with People's United, as well as additional loans (collectively, the "Loan") that were subject to a master credit agreement between the Debtor and People's United. *Id.*, ¶ 12. As consideration for the Loan, the Debtor entered into a security agreement with People's United, dated October 25, 1999 (the "Security Agreement"), whereby People's United held a blanket lien on "all Accounts, Chattel Paper, Documents, Goods, Fixtures, Securities, Documents of Title, Inventory, Instruments, Investment Property, General Intangibles, Equipment (excluding motor vehicles) and Records . . . ." *Id.*, ¶ 14. Additionally, Lavalla provided a personal guarantee for the obligations of the Debtor under said agreements. *Id.*, ¶ 16.

On June 30, 2017, the Loan terminated by its own terms thereby making the sums owed immediately due and payable to People's United. *Id.*, ¶ 17. According to People's United, the Debtor owed $1,670,954.23 under the Loan (the "Loan Balance"). *Id.*, ¶ 13. On July 7, 2017, one

week after the Loan terminated, People's United and GHP, a corporation with a place of business located in West Haven, Connecticut, entered into a certain Secured Party Sale Agreement, whereby People's United purported to sell, transfer, assign, and deliver to GHP "all of Seller's interests in the assets of the [Debtor (the "Purchased Assets")] that are subject to the Seller's perfected security interest and described on Schedule 1.1[,]" of the transaction documents (the "Secured Party Sale"). *Id.*, ¶¶ 18–19.[4] In exchange for the Purchased Assets, GHP paid People's United the sum of one million three hundred thousand dollars ($1,300,000) (the "Purchase Price"). *Id.*, ¶ 30.

On the same day as the Secured Party Sale, People's United and Lavalla entered into a mutual release agreement thereby releasing Lavalla of his personal guarantee under the Loan. Additionally, Lavalla and GHP entered into an employment agreement whereby Lavalla would be paid $200,000 per year for a fixed number of years, plus commissions and benefits. *Id.*, ¶¶ 26–27. Thereafter, GHP and/or Lavalla took control of all of the Debtor's assets and its bank accounts. *Id.*, ¶ 39.

The Complaint alleges, upon information and belief, that People's United did not obtain an appraisal of the Purchased Assets in connection with the Secured Party Sale and did not thoroughly investigate the value of the Purchased Assets, *Id.*, ¶¶ 35, 37; nor did it solicit bids from anyone other than GHP. *Id.*, ¶¶ 34, 36. The Complaint also alleges, upon information and belief, that People's United, after being introduced to GHP by Lavalla, colluded to quickly and privately transfer all of the Debtor's assets to GHP in exchange for payment to People's United, the release of Lavalla's personal guaranty, and a valuable employment contract for Lavalla. *Id.*, ¶ 21.

The Trustee further alleges in the Complaint that Lavalla individually signed a consent agreement (the "Consent Agreement") and caused the Debtor to sign the Consent Agreement,

---

[4] Schedules of the aforementioned collateral are included as Exhibits 1A-1E to the Secured Party Bill of Sale, which is itself attached as an exhibit to the Complaint.

4

despite the fact that the Debtor did not receive any consideration in exchange for said Consent Agreement. *Id.*, ¶¶ 23–25. The Trustee alleges that the assets seized by GHP and/or Lavalla included portions of the Debtor's assets that were not part of the Purchased Assets and not covered by the Secured Party Bill of Sale, such as money in the Debtor's deposit accounts and the Debtor's motor vehicles. *Id.*, ¶ 40. The Trustee further alleges, upon information and belief, that the Purchased Assets were worth significantly more than both the Purchase Price and the Loan Balance, that the Debtor had equity in the Purchased Assets, *Id.*, ¶ 29, and that the Purchased Assets were not of the type customarily sold on a recognized market or which threatened to decline rapidly in value. *Id.*, ¶¶ 32–33.

    IV.    DISCUSSION

        a.    The Legal Standard on a Motion to Dismiss

The United States Supreme Court laid out a two-step test to evaluate a complaint's sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, except for legal conclusions, all allegations contained in the complaint are accepted as true. *Id.* Second, the complaint must state a plausible claim for relief to survive dismissal. *Id.* at 679. The plaintiff makes a facially plausible claim when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

### b. Counts II and IV – Constructive Fraudulent Transfers

Counts II and IV of the Complaint allege constructive fraud under 11 U.S.C. § 548 (a)(1)(B) and 11 U.S.C. § 544 pursuant to Conn. Gen. Stat. § 52-552f, respectively. Under Section 548(a)(1)(B) of the Bankruptcy Code, a plaintiff must allege that within two years of the petition date that the Debtor transferred an interest in property and: (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; [or] (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured. 11 U.S.C. § 548(a)(1). Both Section 548(a)(1)(B) of the Code and claims of constructive fraudulent transfer under Conn. Gen. Stat. Section 52–552f(a) require the Trustee to show, *inter alia*, that the Debtor did not receive "reasonably equivalent value" for the transfer. *Carney v. Horion Investments Ltd.*, 107 F. Supp. 3d 216, 231–32 (D. Conn. 2015).

In the Motion, the Defendants assail the Complaint for failing to allege with particularity how the sale was made for less than reasonably equivalent value. Specifically, the Defendants argue that the Complaint fails with respect to these counts, even under the more relaxed pleading requirements of Rule 8 of the Federal Rules of Procedure, because it fails to allege a lack of reasonably equivalent value and contains only a bald and essentially conclusory statement that "[*u*]*pon information and belief*, the Purchased Assets were worth significantly more than both the

6

Purchase Price and the Loan Balance, and [that] the Debtor had equity in the Purchased Assets." Complaint, ¶ 29 (emphasis added); MOL, p. 9.

While courts have generally agreed that a claim for constructive fraud need only be pleaded according to the more lenient requirement of Rule 8, as opposed to the heightened particularity required by Rule 9(b), the application of Rule 8 is nevertheless subject to the standard outlined in *Twombly* and *Iqbal* which conclusively determined that a complaint must provide facts—distinct from legal conclusions and labels—that give rise to a plausible entitlement to relief. *In re Sagarino*, No. 16-21218 (JJT), 2017 WL 3865625, at *2; *see Iqbal*, 556 U.S. 678. "The purpose of this pleading requirement is to ensure that the defendant receives fair notice of what the . . . claim is and the grounds upon which it rests." *In re Bernard L. Madoff Inv. Sec. LLC*, 454 B.R. 317, 332 (Bankr. S.D.N.Y. 2011), leave to appeal denied, No. 11 MISC. 337, 2012 WL 5511952 (citation and internal quotation marks omitted).

Here, the Trustee argues in her Objection to the Motion (ECF No. 24, the "Objection") that she has sufficiently alleged that "the Purchased Assets were worth significantly more than both the Purchase Price and the Loan Balance," a fact, she argues, that is supported by the exhibits attached to the Complaint which indicate "on their face . . . that the assets transferred were worth significantly more than any consideration that the Debtor received."[5] Objection, p. 13; *see also* Fed. R. Civ. P. 10(c); Fed. R. Bankr. P. 7010. Additionally, the Trustee argues that the facts alleged in the Complaint support the inference that the fair market value of the assets was never properly determined, and thus, the Purchase Price should not be presumed to represent fair market value, contrary to any recitals stating as such in the transaction documents. Objection, p. 13.

---

[5] *See* footnote 4 of this Memorandum of Decision; *see also* Objection, p. 14 (referencing values assigned to each asset class in Exhibits 1A-1E) ("Machinery & Equipment - $1,471,000.00; Current Accounts Receivable - $346,006.48; 30-90 Days AR - $120,172.44; Over 90 days AR - $146,425.33; Work-In-Progress - $327,011.16; Inventory - $165,560.27; Total Value - $2,576,175.68.").

A review of the Complaint readily reveals that the Trustee failed to plead any particularized facts regarding the value of the transferred assets or facts that show that the Debtor received less than equivalent value under Section 548(a)(1)(B) or CUFTA. The Court notes, however, that the underlying transaction documents of the Secured Party Sale Agreement attached to the Complaint as Exhibits include what purports to be a "valuation" of machinery and equipment from November 2016 (under both a forced liquidation and ordinary liquidation analysis), as well as what appears to be internal documents produced by the Debtor on July 6, 2017, relating to accounts receivable, work in progress and present inventory. While the transaction documents provide dollar amounts associated with these various assets, the Secured Party Sale Agreement also specifically provides (as it relates to any integrated schedules): "Neither the specification of any dollar amount in the representations and warranties contained in this Agreement nor the inclusion of any item on a Schedule is evidence of or intended to imply the materiality of such item for purposes of the Agreement . . . ." Complaint, Ex. A, pp. 6–7. Further, nothing contained in the attachments would lead the Court to conclude that these valuations, figures or conclusions are what the Trustee relies upon in support of her claims.

While the Trustee's *Objection* identifies, with particularity, what assets identified in the Exhibits to the Complaint she believes were transferred for less than reasonably equivalent value,[6] along with the respective values that she assigns to them (which appears to be based upon the Debtor's books and records, as well as sale transaction documents appended to the Complaint) (*see* Objection, p. 5 ["The investigation discovered, inter alia, that the value of the assets transferred was likely higher than $1.3M based on the Debtor's own books and records"]), the Complaint itself utterly fails to make any references to those valuations as the basis for the

---

[6] *See* footnote 5 of this Memorandum of Decision.

allegations contained therein. Although the attached exhibits are to be viewed as part of the Complaint, the Complaint, at the most basic level, fails to connect the proverbial dots and assert which facts it relies on in support of Counts II and IV. Although the Objection alleges supporting facts with particularity—facts that are supportable by discernable sources attached to the Complaint—because the Complaint itself fails to make any such reference and fails to provide even the simplest calculation, the Complaint does, in fact, lack the particularity required under *Iqbal* and *Twombly* and fails to provide the Defendants with sufficient notice of the grounds upon which the claims rest.

As a corollary argument, the Defendants contend that because the Trustee failed to sufficiently plead the alleged value of the transferred assets, and because the Trustee can only pursue a fraudulent transfer action if there will be a benefit to the bankruptcy estate, Counts II and IV must fail because the Complaint provides no way of knowing whether or not avoiding the Secured Party Sale would result in a net surplus sufficient to overcome People's United's secured claim (in the event the transfer was avoided and the recovered assets were subsequently sold) and, thus, provide a benefit to the estate. The Court agrees with the Defendants, insofar as, without pleading sufficient particularity, the task of assessing the bona fides of an alleged cause of action becomes difficult, if not impossible. Accordingly, the Court hereby **GRANTS** the Motion as to **Counts II** and **IV**.

In the event that the Court granted the Motion in full or in part, the Trustee has requested leave to amend the Complaint. Generally, leave to amend should be freely granted when justice so requires, unless it would be futile. *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir. 1995). This determination, however, lies entirely within the Court's discretion. *John Hancock Mut. Life Ins. Co.* v. *Amerford Intern. Corp.*, 22 F.3d 458, 462 (2d Cir. 1994). In this instance, the

circumstances support an opportunity to amend. The Court, therefore, **GRANTS** permission for the Trustee to amend the Complaint within thirty (30) days from the entry of this Memorandum of Decision.

### c. Counts I and III - Actual fraud

Counts I and III allege actual fraud, under 11 U.S.C. §§ 548 (a)(1)(A) and 544, pursuant to Conn. Gen. Stat. § 52-552e, respectively. Both Section 548(a)(1)(A) of the Code and Connecticut fraudulent conveyance laws require that the Complaint allege that the Defendants act with "actual intent" to "hinder, delay or defraud" the creditor. *See* 11 U.S.C. § 548(a)(1)(A); Conn. Gen. Stat. § 52–552(e). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

When alleging fraud, however, "[c]onclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudulent intent.'" *Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.*, 259 F. Supp. 2d 172, 179 (D. Conn. 2003) (*quoting IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993)). "Actual fraudulent intent may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusual nature of the transaction." *Id.* (*citing HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir.1995)). Since direct evidence of fraudulent intent is rare, "courts infer fraudulent intent by examining the circumstances surrounding the transfer to determine whether any 'badges of fraud'[7] are present." *Hirsch v. Steinberg (In re Colonial Realty*

---

[7] Examples of "badges of fraud" include: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who

*Co.)*, 226 B.R. 513, 522 (Bankr. D. Conn. 1998) (*citing Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582 (2d Cir. 1983)) (footnote added).

The Defendants argue that Counts I and III also lack particularity and rely too heavily on allegations that are based upon "information and belief." Specifically, the Defendants argue that, beyond alleging that the consideration received for the Purchased Assets was not reasonably equivalent to their value, the Complaint simply relies on the fact that the transfer was of all or substantially all of the Debtor's assets and that the Debtor became insolvent as result of the transfer; which are facts present in almost any secured party sale and, therefore, they should not give rise, under the present circumstances, to an inference of actual fraudulent intent. *See* MOL, p. 6.[8]

"[T]he adequacy of particularized allegations under Rule 9(b) is . . . case- and context-specific." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (*quoting Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir. 2015)). "Despite the generally rigid requirement [of Rule 9(b)], allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge. . . . Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff but he has sufficient data to justify interposing an allegation on the subject. . . . Where

---

transferred the assets to an insider of the debtor. Conn. Gen. Stat. § 52-552e; *see also In re Lyondell Chem. Co.*, 554 B.R. 635, 652–53 (S.D.N.Y. 2016).

[8] The Defendants further argue that the Trustee, during the two years preceding the Complaint, conducted no discovery of the Defendants under Bankruptcy Rule 2004, which could have assisted her in developing sufficient facts to determine whether any of the eleven badges of fraud listed above existed. MOL, p. 7. While the Trustee concedes that "it is true that the Trustee did not file a motion under Rule 2004," she argues that this "does not mean the Trustee did not conduct discovery." Moreover, "because the Defendants' actions left the bankruptcy estate with no funds to hire a forensic accountant, obtain appraisals, or conduct formal discovery[,]" the Trustee had limited resources to conduct an in-depth pre-complaint investigation of these claims. Objection, p. 5. The Court is sympathetic to the Trustee with respect to the challenges that such a situation presents.

pleading is permitted on information and belief in a complaint that alleges fraud (and is therefore subject to Rule 9(b)), we require that the complaint adduce specific facts supporting a strong inference of fraud." *Id.,* 81–82 (citations and internal quotation marks omitted; emphasis added).

"However, where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt 'a more liberal view . . . since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'" *In re Bernard L. Madoff Inv. Sec. LLC*, *supra*, 454 B.R. at 329 (*quoting Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.*), 361 B.R. 369, 395 (Bankr.S.D.N.Y.2007)); *see also Shields v. Citytrust Bancorp., Inc*., 25 F.3d 1124, 1128 (2d Cir.1994).

Here, in her Objection, the Trustee argues that she has adequately pleaded facts that demonstrate that there is, at the very least, circumstantial evidence to establish fraudulent intent and that at least seven badges of fraud can be inferred from the allegations in the Complaint. Objection, p. 8. Specifically, the Trustee argues that the facts alleged in the Complaint support the following inferences: (1) that the release received by Lavalla from People's United and the employment contract received by Lavalla constitute a transfer to an insider (Complaint, ¶¶ 16, 26–27); (2) Certain property of the Debtor, *i.e.*, vehicles and deposit accounts, remained in the possession of the Debtor after the transfer (*Id.*, ¶¶ 39–41); (3) The sale was not public and occurred over a very short period of time, which implies that the transfer was concealed (*Id.*, ¶¶ 32, 35–36); (4) Just prior to the sale, the full amount owed by the Debtor to People's United came due (*Id.*, ¶ 17);[9] (5) The transfer was for essentially all of the Debtor's assets (*Id.*, ¶¶ 21, 39-40); (6) The

---

[9] The Trustee acknowledges that with respect to this badge of fraud, she omitted to allege that just prior to the sale the Debtor was determined to be in default on its loan by People's United. Objection, p. 9. However, the Trustee points out that this fact is also asserted in the recitals of the transaction documents that were attached to the Complaint. *Id*.

12

transfer was not for reasonably equivalent value (*Id.*, ¶ 29); and (7) The Debtor become insolvent as a result of the transfer.[10]

As stated previously herein, the Trustee has failed to allege sufficient facts to support her allegation that the transfer was for less than reasonably equivalent value. Furthermore, despite the Trustee's contentions, the fact that Lavalla and GHP took possession of certain assets that were not part of the Secured Party Sale, under these circumstances, this does not give rise to an inference of fraudulent intent. However, with respect to the five remaining badges of fraud that the Trustee argues are present, the Court is inclined to agree that the granting of a release coupled with an employment contract, given that the transfer was made pursuant to a private party sale over a particularly truncated period, for essentially all of the Debtor's assets, which resulted in the Debtor becoming insolvent, makes plausible the inference that fraudulent intent was present. *See In re Neri Bros. Constr. Corp.*, 593 B.R. 100, 149 (Bankr. D. Conn. 2018) (*quoting The Cadle Co. v. White*, No. 3:02-CV-00030 TPS, 2006 WL 798900, at *7 (D. Conn. Mar. 21, 2006) ("[i]ndeed, 'that five of the eleven badges of fraud are present raises a strong presumption of intent to defraud . . . .'").

Accordingly, the Motion is hereby **DENIED** as to **Counts I** and **III**.

### d. Count VI – Constructive Trust

Next, the Court addresses the threshold question whether a claim for constructive trust is properly plead as a cause of action or as a remedy. During the Hearing on the Motion, the Defendants raised for the first time the issue of whether Count VI, pertaining to claim of constructive trust, was properly plead as a stand-alone cause of action or whether it should pleaded as an equitable remedy for a claim of unjust enrichment (*see* Complaint, Count VI, p. 11). While

---

[10] According to the Courts experience and common sense, the involuntary petition placing the Debtor in bankruptcy proceedings supports the fact that as a result of the transfer, the Debtor became insolvent.

definitive appellate precedent on this question of state law is lacking, "[g]enerally, a court will impose a constructive trust as the remedy where it finds that a party holding legal title to a property has been unjustly enriched; [thus] a count in a complaint seeking a constructive trust does not raise an independent substantive cause of action." *In re Flanagan*, 415 B.R. 29, 44–45 (D. Conn. 2009); *see Macomber v. Travelers Property and Cas. Corp.*, 261 Conn. 620, 623 n. 3, 804 A.2d 180 (2002) (noting that a constructive trust is a remedy, not a substantive cause of action); *Giulietti v. Giulietti*, 65 Conn. App. 813, 856, 784 A.2d 905 (2001) ("[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.") (internal quotation omitted).

The Court sees no compelling reason to part from the aforementioned line of cases that have previously considered the issue. Accordingly, the Motion to Dismiss is hereby **GRANTED** as to **Count VI**.

e.  Count VII – Article Nine of the Uniform Commercial Code

Lastly, Count VII alleges that the Secured Party Sale was not "commercially reasonable" as required by Article Nine of the Uniform Commercial Code, which is made applicable through Conn. Gen. Stat. § 42a-9-610 *et seq*. Connecticut General Statutes Section 42a-9-627(b) provides: "A disposition of collateral is made in a commercially reasonable manner if the disposition is made: (1) In the usual manner on any recognized market; (2) At the price current in any recognized market at the time of the disposition; or (3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition."

The Defendants assail Count VII on two theories. First, they argue, as they have throughout the Motion, that an "allegation that [the Trustee or the Estate] 'suffered damages' without particular facts as to how she was damaged does not satisfy the federal pleading requirements,"

under the present circumstances.[11] MOL, p. 11 (citations and internal quotation marks omitted). The Complaint, they argue, by failing to allege the value of the assets, omits a critical and necessary fact for stating a cause of action for damages. *Id.* Second, the Defendants argue that the Trustee's allegation that the sale was not commercially reasonable is directly contradicted by the documents attached to the Complaint, which state that the disposition of the collateral, including the "[p]rice, preparation of the collateral, method, manner, time, and place[,] is commercially reasonable." *Id.*, at 12.

In response to the first contention, the Trustee argues that the Defendants' position lacks merit because she is only required to plead facts that support how the Estate was damaged and is not required to plead a specific dollar amount of damage at this juncture. Objection, p. 17. In response to the second argument, the Trustee contends that "the Complaint expressly alleges that the Debtor did not receive any consideration in exchange for the Consent Agreement . . . [and therefore] the 'Fraudulent Transfers' that the Trustee seeks to avoid . . . includes 'any transfer or waiver of rights under the Consent Agreement.'" *Id.*, p. 16.

In this instance, while the Complaint recites the relevant elements for a cause of action under Article Nine of the Uniform Commercial Code, as the Defendants suggest, the Complaint is void of any subordinate facts that support the allegation of how the Estate was in fact damaged by the transfer because there is no value assigned to the subject assets in the Complaint. With respect to Trustee's reliance on *Int'l Bus. Machines Corp. v. Dale*, No. 7:11-CV-951 VB, 2011 WL 4012399, that case addressed a distinguishable set of circumstances where damages were alleged in a particular dollar amount but the manner by which that amount was arrived at was not pled or specified. Here, in contrast, the Complaint simply alleges that the estate was damaged, but fails to

---

[11] The Defendants argue that this is not a circumstance where the Trustee may be relieved of this pleading standard on account of a claim that the particular amount of damages cannot yet be determined.

15

state a dollar amount relating to those damages. And while a claim that fails to identify damages without any dollar amount may not be facially deficient per se, that claim nonetheless remains vulnerable to an attack on the grounds that it may lack the particularity required under *Twombly* and *Iqbal*.[12]

As the Trustee's Objection indicates through the inclusion of the values she subsequently assigned to the Purchased Assets, this calculation was one that could have been readily made at the time the Complaint was filed. Similar to the reasons previously articulated in this Memorandum of Decision regarding the Complaint's failure to sufficiently allege that the assets were transferred for less than a reasonably equivalent value, the Court concludes that by failing to even speculate as to the amount of damages suffered by the Debtor, the Trustee omits a critical and necessary fact for stating a cause of action under Article 9 of the Uniform Commercial Code and Connecticut General Statutes Section 42a-9-610. Accordingly, the Motion is **GRANTED** as to Count VII. As previously stated, the circumstances here support an opportunity to amend, and therefore, the Court **GRANTS** permission for the Trustee to amend the Complaint within thirty (30) days from the entry of this Memorandum of Decision.

With respect to the Defendants' second contention concerning whether recitals in an agreement control in the event they conflict with the pleadings they are attached to, the Court agrees with the Trustee that the Complaint expressly alleges that the Debtor did not receive any consideration in exchange for the Consent Agreement (Complaint, ¶ 25), and that when identifying which transfers the Trustee is seeking to avoid, the Complaint includes "any transfer or waiver of rights under the Consent Agreement." (*Id*., ¶ 44). Therefore, the language in the Consent

---

[12] While not dispositive in the present case, Connecticut Practice Book Section 10-20 and Conn. Gen. Stat. Section 52-91 provide two examples of the general principal that legal damages must be pled with particularity.

Agreement stating that the Debtor acknowledged that the sale was commercially reasonable does not, in and of itself, act as a bar to the Trustee's claims.

## V. CONCLUSION

Drawing upon its experience and common sense, the Court is not satisfied that the Chapter 7 Trustee has pled sufficiently particularized facts to survive the Motion. As previously stated herein, the Defendants' Motion to Dismiss is **GRANTED** as to **Counts II**, **IV**, **VI** and **VII**, and **DENIED** as to **Counts I** and **III**. Additionally, the Court **GRANTS** permission for the Trustee to amend the Complaint within thirty (30) days from the entry of this Memorandum of Decision.

**IT IS SO ORDERED** at Hartford, Connecticut this 6th day of November 2020.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut