UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 17-21513 (JJT) |
| | ) | | |
| INTEGRITY GRAPHICS, INC., | ) | | |
|     DEBTOR. | ) | CHAPTER | 7 |
| | ) | | |
| BONNIE MANGAN, TRUSTEE, | ) | ADV. PRO. NO. | 19-02027 (JJT) |
|     PLAINTIFF | ) | | |
| | ) | | |
| V. | ) | RE: ECF NOS. | 57, 59, 68, 69, 78 |
| | ) | | |
| PEOPLE'S UNITED BANK, N.A., | ) | | |
| GHP MEDIA, INC., AND | ) | | |
| JOSEPH LAVALLA, | ) | | |
|     DEFENDANTS. | ) | | |
| | ) | | |

**MEMORANDUM OF DECISION
ON DEFENDANTS' MOTION TO DISMISS**

I.    INTRODUCTION

Before the Court is a second Motion to Dismiss (ECF No. 68, "Motion to Dismiss II" or the "Motion") filed jointly by Defendants, People's United Bank ("PUB"), GHP Media, Inc. ("GHP") and Joseph Lavalla ("Lavalla"), the principal of the Debtor at the time of the secured party sale referenced herein. As previously recited by this Court in its November 6, 2020 Memorandum of Decision (ECF No. 57), this Adversary Proceeding was initiated by the Chapter 7 Trustee (the "Trustee") on October 31, 2019, in order to avoid and recover, pursuant to 11 U.S.C. §§ 544 and 548, the Connecticut Fraudulent Transfer Act (CUFTA) and Article Nine of the Uniform Commercial Code made applicable through the Connecticut General Statutes, certain intentional and/or constructive fraudulent transfers of the Debtor's property made to or for the


benefit of the Defendants in connection with a purported secured party sale agreement between Defendants PUB and GHP. *See* ECF No. 1, the "Complaint."

Prior to hearing the present motion, this Court previously granted in part, and denied in part, the Defendants' first Motion to Dismiss (*see* ECF No. 57)[1] wherein the Court concluded that while the Trustee's *Objection* to the Motion to Dismiss identified with particularity what assets she believes were transferred for less than reasonably equivalent value, along with the respective values that she assigns to them, the Complaint itself failed to make any references to those valuations as the basis for the allegations contained therein. *See* Memorandum of Decision, ECF No. 57, pp. 7–9.  In addition to dismissing the constructive fraudulent transfer counts (Counts II and IV) of the Complaint, the Court also held that the Trustee, by failing to allege the amount of damages suffered by the Debtor, omitted a critical and necessary fact for stating a cause of action under Article 9 of the Uniform Commercial Code and Connecticut General Statutes Section 42a-9-610. *Id.*, p. 16.

The Trustee was permitted to replead and has done so by filing an Amended Complaint (ECF No. 59).  Defendants PUB, GHP and Lavalla, now move pursuant to Fed. R. Civ. P. 12(b)(6), as made applicable to this proceeding by Fed. R. Bankr. P. 7012(b), for dismissal of the Amended Complaint as to Counts II and IV alleging constructive fraudulent transfer and Count VI alleging a violation of Article Nine of the Uniform Commercial Code. *See* Motion to Dismiss II and accompanying memorandum of law (ECF No. 69; "MOL").

---

[1] The Court's Memorandum of Decision granted the prior Motion to Dismiss as to: Counts II and IV of the original Complaint, which alleged constructive fraudulent transfer under both state and federal law; Count VI, which alleged constructive trust; and Count VII, which alleged damages under Article 9 of the Uniform Commercial Code. The Court denied the Motion to Dismiss as to Counts I and III alleging actual fraudulent transfer. Additionally, the Court granted the Trustee's request for leave to replead the dismissed counts.

A hearing on the Motion was held on April 2, 2021 (ECF No. 80), whereat the parties were able to advance their respective arguments. At the conclusion of that hearing, the Court took the matter under advisement. As discussed further herein, the Defendants' Motion turns principally on whether the particularized facts now alleged in the Amended Complaint pertaining to the value of the transferred assets can be read to plausibly support a cause of action for constructive fraudulent transfer or a cause of action under Title 9 of the Uniform Commercial Code. After due consideration of the Motion, the parties' supporting papers and the arguments advanced at the April 2, 2021 hearing, and as discussed herein, the Motion to Dismiss is hereby DENIED as to all Counts.

## II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (E), (F), (H) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  BACKGROUND

Prior to the filing of an involuntary petition by three of its trade creditors on October 3, 2017, *see* Main Case 17-21513, ECF No. 1; the Debtor was a full-service print and design company headquartered in Windsor, Connecticut. Amended Complaint, ¶ 11. The Debtor had a commercial revolving line of credit with PUB, as well as additional loans (collectively, the "Loan") that were subject to a master credit agreement between the Debtor and PUB, *id.*, ¶ 12; and which was secured by a blanket lien on "all Accounts, Chattel Paper, Documents, Goods, Fixtures, Securities, Documents of Title, Inventory, Instruments, Investment Property, General Intangibles, Equipment (excluding motor vehicles) and Records . . . ." *Id.*, ¶ 14.

On June 30, 2017, the Loan terminated by its own terms thereby making the loan balance of $1,670,954.23 immediately due and payable to PUB. *Id.*, ¶ 17, ¶ 13. One week later, PUB and GHP entered into a certain Secured Party Sale Agreement, whereby PUB purported to transfer to GHP "all of Seller's interests in the assets of the [Debtor] that are subject to the Seller's perfected security interest," *id.*, ¶¶ 18–19; for the sum of one million three hundred thousand dollars ($1,300,000) (the "Purchase Price"). *Id.*, ¶ 38.

Central to the Trustee's Amended Complaint is the allegation that PUB did not obtain an appraisal of the Purchased Assets nor did it thoroughly investigate the value of the Purchased Assets, *Id.*, ¶¶ 44, 46; which resulted in the Purchased Assets being sold for significantly less than reasonably equivalent value through a process that was not commercially reasonable. *Id.*, ¶¶ 39, 65. In further support of these contentions, the Trustee alleges the following additional facts, which the Trustee makes clear are based upon the sale transaction documents and the Debtor's available books and records:

1. In total, the fair market value of the Purchased Assets, was approximately $3,324,323.81.[2] Amended Complaint, ¶ 30.

2. Based on an appraisal dated November 29, 2016, that machinery and equipment had an *ordinary liquidation value* of $1,471,000. *Id.*, ¶ 31.

3. Accounts receivables, taking into account certain collectability issues, had a *fair market value* of approximately $612,604.25. *Id.*, ¶ 32.[3]

---

[2] According to the Defendants, under a forced liquidation value analysis, the debt retired was approximately 90% of the value of the Purchased Assets ($1,450,000). Audio Transcript, oral argument, at minute 43:00.

[3] The Trustee further categorizes the receivables into accounts that were current at the time of sale ($346,006.48), accounts that were less than 90 days old ($120,172.44) and accounts that were more than 90 days old ($146,425.33).

4. At the time of the sale, the *book value* of the Debtor's work in progress was $327,011.16, which represented projects that, when completed, would have resulted in $533,249.18 in revenue. *Id.*, ¶ 33.

5. The Purchased Assets included, *inter alia*, the Debtor's paper, raw goods, and finished goods inventories, which were *valued by the Debtor* at $165,560.27. *Id.*, ¶ 34.

6. The Purchased Assets included, *inter alia*, the Debtor's customer lists and other general intangibles, which, according to the Debtor's *balance sheet*, had an approximate value of $640,211.42. *Id.*, ¶ 35.

7. According to the Debtor's *balance sheet* at the time of the sale, the Debtor had approximately $107,936.71 in prepaid expenses, as well as rights to one or more deposits, which are valued at $8,719.82. *Id.*, ¶ 36.

8. The Trustee estimates that her damages are approximately $1,653,369.58, which is the difference between the estimated fair market value of the Purchase Assets ($3,324,323.81) and the estimated debt due to PUB ($1,670,954.23). *Id.*, ¶ 88.

IV. DISCUSSION

    a. The Legal Standard on a Motion to Dismiss

The United States Supreme Court laid out a two-step test to evaluate a complaint's sufficiency. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, except for legal conclusions, all allegations contained in the complaint are accepted as true. *Id.* Second, the complaint must state a plausible claim for relief to survive dismissal. *Id.* at 679. The plaintiff makes a facially plausible claim when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (*citing Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 556 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

### b. Counts II and IV – Constructive Fraudulent Transfers

Counts II and IV of the Amended Complaint allege constructive fraud under 11 U.S.C. § 548 (a)(1)(B) and 11 U.S.C. § 544 pursuant to Conn. Gen. Stat. § 52-552f, both of which require the Trustee to show, *inter alia*, that the Debtor did not receive "reasonably equivalent value" for the transfer. *Carney v. Horion Investments Ltd.*, 107 F. Supp. 3d 216, 231–32 (D. Conn. 2015). The crux of the Defendants' argument is that the alleged facts relevant to Counts II and IV are implausible on their face and legally irrelevant as it concerns reasonably equivalent value, and thus, insufficient to carry the constructive fraudulent transfer cause of action. MOL, p. 2. Specifically, the Defendants argue that although this was cast as a secured party sale, it should be deemed a foreclosure because of the distressed circumstances leading up to the sale, and therefore the only material facts that are relevant to the issue of reasonably equivalent value are facts that establish plausibility under a forced liquidation rubric, as opposed to the various methods of valuation applied in the Amended Complaint (i.e., fair market value, book value, cost value, ordinary liquidation value). *Id.*, p. 3.

At this stage of the proceedings, the allegations set forth in Amended Complaint, when taken as true on their face, are sufficient to establish that the Purchased Assets were transferred for

less than reasonably equivalent value. While the Defendants make certain factual assertions relating to the compulsory nature of the sale, those facts are not sufficiently captured in the Amended Complaint, and therefore, are outside of the Court's purview with respect to the present Motion. Moreover, even if such contentions were to be considered by the Court, they present mixed questions of law and fact that require greater scrutiny of the totality of the circumstances. *See Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, 886 F. Supp. 2d 328, 336 (S.D.N.Y. 2012) (when an issue turns on the consideration of all relevant circumstances, generally, a complaint may not properly be dismissed on a motion to dismiss); *see also In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. 87, 127 (Bankr. S.D.N.Y. 2011), *leave to appeal denied sub nom. Picard v. Estate of Madoff*, 464 B.R. 578 (S.D.N.Y. 2011) (holding that certain mixed questions of law and fact should not be determined on a motion to dismiss).

      Here, a review of the Amended Complaint readily reveals that the Trustee has pled sufficiently particularized and plausible facts regarding the alleged value of the Purchased Assets such that, if taken as true, would demonstrate that the Debtor received less than equivalent value under Section 548(a)(1)(B) or CUFTA. While the Defendants also argue that Counts II and IV are at variance with the United States Supreme Court's decision in *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, *reh'g denied*, 512 U.S. 1247 (1994), upon review, the Court agrees with the Trustee's contention that the holding is much narrower than the Defendants acknowledge, in that the Supreme Court expressly limited its opinion to the narrow context of real estate foreclosures under state law. *See id.*, at footnote 3 ("We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different."). The Court further notes that at oral argument, the Defendants conceded that the purchase price of $1,300,000 fell below an estimated forced

liquidation value of the Purchased Assets, which approximated $1,450,000. In this Court's experience, this is a factor that weighs in favor of plausibility, not against it.

Accordingly, the Motion, as to **Counts II** and **IV**, is hereby **DENIED**.

   c. Count VI – Article Nine of the Uniform Commercial Code

Count VI alleges that the Secured Party Sale was not "commercially reasonable" as required by Article Nine of the Uniform Commercial Code, which is made applicable through Conn. Gen. Stat. § 42a-9-610 *et seq.*[4] The Defendants argue that allegations of "fair market value" of the assets have no relevance to the amount of any conceivable loss by the Trustee and are therefore legally insufficient in the context of a foreclosure sale. As previously stated herein, the question of whether the sale should be deemed a forced liquidation of the Debtor's assets is a mixed question of law and fact, and under the facts alleged in the Amended Complaint, cannot be determined at this stage.

Accordingly, the Motion is **DENIED** as to **Count VI**.

 V. CONCLUSION

Drawing upon its experience and common sense, the Court is now satisfied that the Chapter 7 Trustee has pled sufficiently particularized and plausible facts to survive the Motion, and therefore, it is hereby **DENIED**.

**IT IS SO ORDERED** at Hartford, Connecticut this 20th day of May 2021.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[4] Connecticut General Statutes Section 42a-9-627(b) provides: "A disposition of collateral is made in a commercially reasonable manner if the disposition is made: (1) In the usual manner on any recognized market; (2) At the price current in any recognized market at the time of the disposition; or (3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition."